UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ST. PAUL SURPLUS LINES               )
INSURANCE COMPANY,                   )
                                     )
         Plaintiff,                  )
                                     )
    vs.                              )     Case No. 4:08CV1868-DJS
                                     )
DAVID M. REMLEY, and                 )
THE REMLEY LAW FIRM,                 )
                                     )
         Defendants.                 )

## ORDER

Now before the Court is defendants David M. Remley and the Remley Law Firm's motion to dismiss plaintiff St. Paul Surplus Lines Insurance Company's complaint in its entirety for failure to state a claim [Doc. #11]. The matter has been fully briefed and is ready for disposition.

**Standard of Review**

In considering a motion to dismiss a complaint for failure to state a claim, the Court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir. 1999). A motion to dismiss should not be granted unless it appears, beyond a doubt, that the plaintiff can prove no set of facts which would allow relief. Id. Thus, as a practical matter, a dismissal for failure to state a claim should be granted only in a case in which a

plaintiff includes allegations that show, on the face of the complaint, some insuperable bar to relief. Id.

**Facts**

The following facts are those pled in plaintiff's complaint, and are accepted as true for purposes of the instant motion. On August 30, 2003, Anthony Spurgeon was driving his car while intoxicated and substantially in excess of the governing speed limit. Jennifer Kennon was a front-seat passenger riding with Spurgeon that evening. As Spurgeon approached a railroad crossing, he failed to reduce his speed and collided into the rear of a stopped tractor trailer owned by Gilster-Mary Lee Corporation ("Gilster"). Both Spurgeon and Kennon died, and their respective survivors brought wrongful death actions against, among others, Gilster. Gilster was represented in the wrongful death action by defendants Remley and the Remley Law Firm.[1] That case was ultimately settled and an order approving the wrongful death settlement was entered on January 24, 2007. Gilster had primary insurance coverage with Genesis Insurance Company with General Star Indemnity Company ("Genesis"), and secondary insurance coverage with plaintiff. Plaintiff paid two million dollars as a result of the settlement of the wrongful death action.

Plaintiff now brings the instant three-count complaint against defendants. Count I asserts a claim of legal malpractice. Plaintiff alleges that defendants knew that Gilster was insured

---

[1]The Court cannot determine whether defendants were hired directly by Gilster, or for Gilster by Genesis. Regardless, it is not alleged that plaintiff retained defendants.

through primary and secondary policies and understood the provisions of these policies of insurance. Plaintiff further alleges that defendants deviated from the applicable standard of care in failing to accurately assess the verdict potential; timely answer the wrongful death complaint and file affirmative defenses; retain and timely disclose experts; comprehend, analyze, and report to the client about the exposure of the case; and properly eliminate the enhanced injury theory claim through focused discovery and motion for summary judgment. Plaintiff alleges that but for these failures, Gilster and plaintiff would not have had to settle the wrongful death case, and that plaintiff was thereby damaged in excess of two million dollars. Count II asserts a claim for equitable subrogation, alleging that plaintiff paid in excess of two million dollars to protect itself and Gilster in the wrongful death case, and that but for defendants' actions, plaintiff would not have had to do so. Count III is another legal-malpractice claim, wherein plaintiff alleges that Remley was retained to protect the interests of both Gilster (and plaintiff as Gilster's excess insurer), and that plaintiff was a third-party beneficiary of defendants' retention as counsel for Gilster.

**Discussion**

As plaintiff is a citizen of Delaware, defendants are citizens of Missouri, and the amount in controversy exceeds $75,000.00, the Court has diversity jurisdiction pursuant to 28 U.S.C. §1332. Accordingly, Missouri law controls this case. <u>Kunferman v. Ford Motor Co.</u>, 112 F.3d 962, 965 (8th Cir. 1997).

**Legal-Malpractice Claims**

Plaintiff's first and third causes of action implicate Missouri's legal-malpractice law. To maintain a claim for legal malpractice in Missouri, a plaintiff must allege the existence of four elements: (1) an attorney-client relationship between itself and the defendant; (2) negligence or breach of contract by the defendant; (3) proximate causation; and (4) damages. Patterson v. Warten, Fisher, Lee & Brown, LLC, 260 S.W.3d 417, 419 (Mo. App. 2008). At issue in the case now before the Court is the first element, the existence of an attorney-client relationship between plaintiff and defendant.[2]

The "first element of a legal malpractice action may be satisfied by establishing as a matter of fact either that an attorney-client relationship exists between the plaintiff and defendant <u>or</u> an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit plaintiffs." Donahue v. Shughart, Thomson & Kilroy, P.C., 900 S.W.2d 624, 628 (Mo. 1995) (emphasis added). That is, a plaintiff can maintain a legal malpractice action if it has a direct relationship with the defendant, or if satisfies the criteria as a third-party beneficiary. The Court notes that, for purposes of a motion to dismiss, "the averment of an attorney-client relationship is sufficient." Id. at 626.

---

[2]Plaintiff, in Counts I and III, pleads separate legal-malpractice causes of action. However, in the Court's view, a single legal-malpractice claim exists, with different theories regarding the existence of the first element of such a claim.

With regard to the existence of a direct relationship, "[a]n attorney-client relationship exists when a person seeks and receives legal advice and assistance from a lawyer who intends to give legal advice and assistance to the person." Fox v. White, 215 S.W.3d 257, 261 (Mo. App. 2007) (quotation omitted). Missouri courts recognize that an attorney from time to time may speak to an entity other than his client, and merely making a statement or offering an express opinion "to persons engaged in transactions with their clients without intending to assume a duty as attorney to such persons" does not create an attorney-client relationship. Donahue, 900 S.W.2d at 626. Indeed, as a general rule with limited exceptions, an attorney "owes no actionable duty to strangers or non-parties to the attorney-client relationship in the way legal responsibilities are performed." Fox, 215 S.W.3d at 260.

However, under Missouri law, there exist limited circumstances in which a third party (that is, an entity without a direct attorney-client relationship with the attorney-defendant) may maintain an action for legal malpractice against an attorney-defendant. With regard to the ability of a third party to maintain such a lawsuit,

> [t]he question of legal duty of attorneys to non-clients will be determined by weighing the factors in the modified balancing test. The factors are:
>
> (1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs.

- 5 -

>    (2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence.
>
>    (3) the degree of certainty that the plaintiffs will suffer injury from attorney misconduct.
>
>    (4) the closeness of the connection between the attorney's conduct and the injury.
>
>    (5) the policy of preventing future harm.
>
>    (6) the burden on the profession of recognizing liability under the circumstances.

Donahue, 900 S.W.2d at 629.

The Missouri courts have not dealt with the instant issue, that is, whether an excess insurance carrier can maintain a legal-malpractice suit against the attorney that represented the insured. However, as noted above, an averment of the existence of an attorney-client relationship is sufficient to satisfy the first element of a legal-malpractice action at the motion to dismiss stage. In this case, plaintiff avers that a "direct attorney-client relationship existed between" defendants and plaintiff. Further, plaintiff avers that it was "an intended third-party beneficiary" of Gilster's retention of defendants' services. Accordingly, the Court finds that plaintiff sufficiently alleges the first element of a legal-malpractice claim, both as a direct client and as a non-client beneficiary.

It appears that there is no dispute that the remaining three elements of plaintiff's legal-malpractice claim are adequately set forth. Nevertheless, the Court notes that plaintiff avers that defendants "deviated from the applicable standard of

care for attorneys practicing in the Circuit Court of St. Louis, Missouri," that "but for defendants' failure to exercise due care," plaintiff would have maintained a successful defense, and that plaintiff, as a result of defendants' failures, sustained damages. Therefore, for purposes of the instant motion, the Court finds that, as noted above, plaintiff adequately pleads the existence of an attorney-client relationship between itself and the defendant; negligence by the defendants; proximate causation; and damages. Construing the complaint in the light most favorable to plaintiff, the Court finds that plaintiff adequately sets forth a legal-malpractice claim against defendants. Accordingly, defendants' motion to dismiss Counts I and III will be denied.

Going forward, however, the Court notes the very high bar which plaintiff ultimately must meet to succeed against defendants on Counts I and III. That is (in the event plaintiff is unable to produce evidence that it directly sought and received legal advice from defendants <u>and</u> that defendants intended to give plaintiff such legal advice), the Court observes that the first factor a non-client must demonstrate includes a showing that it cannot be characterized as an incidental or indirect beneficiary. <u>See</u> <u>id.</u> at 629; <u>see also</u> <u>Mid-Continent Cas. Co. v. Daniel, Clampett, Powell & Cunningham, LLC</u>, 196 S.W.3d 595, 598-99 (Mo. App. 2006) (finding that the plaintiff, a company which was part of an informal business conglomeration with an insurer, did not have an attorney-client relationship with the law firm hired to represent the insurer's insured, even though plaintiff was listed as a client,

paid the firm's legal fees, participated in discussions about the litigation, and believed it had an attorney-client relationship with law firm). Further, the Court notes that other states have rejected excess insurers' claims that they are intended beneficiaries of services provided by defense attorneys to insureds, see, e.g., Am. Cont'l Ins. Co. v. Weber & Rose, 997 S.W.2d 12 (Ky. App. 1998), and reiterates that its above findings are pursuant to a motion to dismiss standard of review.

**Equitable Subrogation Claim**

Plaintiff asserts, in Count II of its complaint, a claim for equitable subrogation.[3] Separate from the elements necessary to prove a legal-malpractice action, the doctrine of equitable subrogation typically "involves 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.'" Metmor Fin., Inc. v. Ladoll Corp., 976 S.W.2d 454, 461 (Mo. App. 1998) (quoting Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. P'ship, 868 S.W.2d 210, 223 (Mo. App. 1994)). "[S]ubrogation is not necessarily based on the existence of a contract or privity of contract," and Missouri courts have

---

[3] "Courts that allow an excess insurer to sue defense counsel hired by a primary insurer for malpractice typically hold that the excess insurer is equitably subrogated to the insured's rights against the attorneys." Douglas R. Richmond, Rights and Responsibilities of Excess Insurers, 78 Denv. U. L. Rev. 29, 111 (2000). However, it is worth noting that "a number of courts have generally rejected equitable subrogation in the legal malpractice context." Id. at 117. The Court further notes that the issue of whether an excess insurer can assert a claim of equitable subrogation against an attorney hired by the direct insurer or the insured has not been determined in Missouri.

granted subrogation where denial of such remedy "would be contrary to equity and good conscience." Kansas City Downtown Minority Dev. Corp., 868 S.W.2d at 224 (quotation omitted).

> Originally a common law doctrine, subrogation has as its aim the advancement of justice and prevention of injustice. Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it. Although available, subrogation is a <u>fairly drastic remedy and is usually allowed only in extreme cases bordering on if not reaching the level of fraud</u>.

Metmor Fin., 976 S.W.2d at 461 (emphasis added) (internal quotations omitted).

Missouri courts have not considered the instant issue of whether an excess insurer may maintain an equitable subrogation action against a law firm hired by the primary insurer or the insured. Plaintiff argues that other states allow an excess insurer to bring equitable subrogation actions against law firms in such an instance, and cites, for example, cases from Texas, New York, and Illinois. However, the Court notes that Missouri considers equitable subrogation a fairly "drastic" remedy. See Ethridge v. Tierone Bank, 226 S.W.3d 127, 134 (Mo. banc 2007) ("As the doctrine of equitable subrogation developed in Missouri, it became known as a fairly drastic remedy...usually allowed only in extreme cases.... For equitable subrogation to apply, [the defendant] must have engaged in fraudulent conduct or committed acts bordering on fraud that created the condition that caused the [plaintiff] a loss."). The states cited by plaintiff appear to take a broad view of the doctrine of equitable subrogation. See,

- 9 -

e.g., Bennett Truck Transp., LLC v. Williams Bros. Const., 256 S.W.3d 730, 734 (Tex. App. 2008) ("Texas courts are particularly hospitable to the doctrine [of equitable subrogation]."); Liberty Mut. Ins. Co. v. Am. Home Assur. Co., 348 F. Supp. 2d 940, 960 (N.D. Ill. 2004) ("Equitable subrogation is a broad doctrine....").

Further, the Court notes that while some states do allow such an equitable subrogation action, there are others that have ruled that an excess insurer cannot maintain an equitable subrogation action against a law firm hired by the primary insurer or the insured. These courts take the position that an equitable subrogation action amounts to an assignment of the legal-malpractice action (claims which, for various reasons, are unassignable in Missouri), the potential conflict of loyalty for the attorney, or that the attorney is not garnering the alleged windfall by not having to defend against his or her malpractice. See, e.g., Querrey & Harrow, Ltd. v. Transcon. Ins. Co., 861 N.E.2d 719, 723-24 (Ind. App. 2007).

Finally, in this case, plaintiff alleges that defendants failed to exercise due care when it represented Gilster. However, plaintiff does not allege that defendants' actions bordered on or reached a level of fraud or conspiracy to defraud plaintiff. Indeed, plaintiff does not even allege that defendants acted in bad faith; rather plaintiff alleges that defendants breached the relevant standard of care.

The Court finds that if the Missouri Supreme Court were to consider the instant issue of whether an excess insurer can

maintain an equitable subrogation action against a law firm hired by the primary insurer or the insured, it would rule that, because of the "extreme" nature of the remedy of equitable subrogation in Missouri, and because there is a potential conflict of loyalty for the attorney to its direct client, such an action may not be maintained.  Further, the Court finds that even if such a cause of action may be maintained, because plaintiff fails to plead that defendants committed fraud, conspiracy to defraud plaintiff, or otherwise acted in bad faith, plaintiff does not sufficiently set forth an equitable subrogation cause of action under Missouri law.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendants David M. Remley and the Remley Law Firm's motion to dismiss plaintiff St. Paul Surplus Lines Insurance Company's complaint [Doc. #11] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is granted with regard to the claims asserted by plaintiff in Count II of the complaint.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is denied in all other respects.

Dated this ___13th___ day of July, 2009.

          /s/Donald J. Stohr
          UNITED STATES DISTRICT JUDGE